Approved, SCAO

Original - Court
1st Copy- Defendant

2nd Copy - Plaintiff
3rd Copy -Return

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | SUMMONS | CASE NO.<br>21-004152-CB<br>Hon. Edward Ewell, Jr. |
|---|---|---|

Court address : 2 Woodward Ave., Detroit MI 48226

Court telephone no.: 313-224-5195

| **Plaintiff's name(s), address(es), and telephone no(s)**<br>IPS Contracting, Inc. | v | **Defendant's name(s), address(es), and telephone no(s).**<br>Rivian Automotive, LLC |
|---|---|---|
| **Plaintiff's attorney, bar no., address, and telephone no**<br><br>J. Christian Hauser 57990<br>1301 W Long Lake Rd Ste 250<br>Troy, MI 48098-6326 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

### Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

### Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court,

where it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.                **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>3/29/2021 | Expiration date*<br>6/28/2021 | Court clerk<br>Laverne Chapman |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01** (9/19)    **SUMMONS**    MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105



**SUMMONS**
Case No. : **21-004152-CB**

# PROOF OF SERVICE

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

☐ **OFFICER CERTIFICATE** OR ☐ **AFFIDAVIT OF PROCESS SERVER**

I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required)

Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that: (notarization required)

☐ I served personally a copy of the summons and complaint.

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____
List all documents served with the Summons and Complaint

_____
_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled $ | Fee $ | |
|---|---|---|---|
| Incorrect address fee $ | Miles traveled $ | Fee $ | **Total fee** $ |

Signature _____

Name (type or print) _____

Title _____

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____ Signature: _____
Date                                     Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments
_____ on _____
Day, date, time

_____ on behalf of _____.
Signature

| STATE OF MICHIGAN<br>3rd JUDICIAL CIRCUIT<br>COUNTY OF WAYNE | VERIFICATION OF<br>BUSINESS COURT ELIGIBILITY<br>AND NOTICE OF ASSIGNMENT | CASE NO.<br><br>-CB |
|---|---|---|

Court address: 2 Woodward Ave., Detroit, MI 48226

| Plaintiff(s)<br>IPS CONTRACTING, INC. | v | Defendant(s)<br>RIVIAN AUTOMOTIVE, LLC |
|---|---|---|

I am the attorney for the [check one] ☑ plaintiff ☐ defendant and per *MCR 2.114(B)(2) and MCR 2.114(D)* declare to the best of my information, knowledge, and belief that this case meets the statutory requirements to be assigned to the business court, *MCR 2.112(O), MCL 600.8031 et seq.*, and request assignment to the Business Court for the following reasons:

**[*Both Sections 1 and 2 must be completed to be accepted by the Court (check all that apply)*]**

1. **Parties.** This is a qualifying business or commercial dispute as defined by *MCL 600.8031(1)(c)* because,

   ☑ all of the parties are business enterprises

   ☐ one or more of the parties is a business enterprise and the other parties are its or their present or former owners, managers, shareholders, members, directors, officers, agents, employees, suppliers, or competitors, and the claims arise out of those relationships

   ☐ one of the parties is a non-profit organization, and the claims arise out of that party's organizational structure, governance, or finances

   ☐ It is an action involving the sale, merger, purchase, combination, dissolution, liquidation, organizational structure, governance, or finances of a business enterprise.

   **AND**

2. **Actions.** This business or commercial action as defined by *MCL 600.8031(2)* involves,

   ☐ information technology, software, or website development, maintenance, or hosting

   ☐ the internal organization of business entities and the rights or obligations of shareholders, partners, members, owners, officers, directors, or managers

   ☑ contractual agreements or other business dealings, including licensing, trade secret, intellectual property, antitrust, securities, noncompete, nonsolicitation, and confidentiality agreements if all available administrative remedies are completely exhausted, including but not limited to, alternative dispute resolution processes prescribed in the agreements

   ☐ commercial transaction, including commercial bank transactions

   ☐ business or commercial insurance policies

   ☐ commercial real property

   ☐ other type of business or commercial dispute (explain):

| March 29, 2021 | /s/ J. Christian Hauser |
|---|---|
| Date | Signature |
| | J. Christian Hauser                              P57990 |
| | Name (type or print)                              Bar no. |

21-004152-CB FILED IN MY OFFICE   Cathy M. Garrett   WAYNE COUNTY CLERK   3/29/2021 3:09 PM   Laverne Chapman

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

| | |
|---|---|
| IPS CONTRACTING, INC., | Case No. 2021 -         - CB |
| Plaintiff, | Hon. |
| v. | |
| RIVIAN AUTOMOTIVE, LLC, | Business Court case per MCR 2.112(O). This case meets the statutory requirements for a case to be assigned to the business court. |
| Defendant. | |

J. Christian Hauser (P57990)
FRASCO CAPONIGRO WINEMAN
SCHEIBLE HAUSER & LUTTMANN, PLLC
Attorneys for Plaintiff
1301 W. Long Lake Road, Suite 250
Troy, MI 48098
(248) 334-6767
ch@frascap.com

*There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the Complaint.*

## COMPLAINT

Plaintiff IPS Contracting, Inc. ("Plaintiff" and/or "IPSC"), through its attorneys, Frasco Caponigro Wineman Scheible Hauser & Luttmann, PLLC, states for its Complaint as follows:

### JURISDICTIONAL ALLEGATIONS

1. IPSC is a Michigan corporation with its primary place of business located in Oakland County, Michigan.

2. Upon information and belief, Defendant Rivian Automotive, LLC ("Rivian") is a Delaware corporation with its primary place of business in Wayne County, Michigan.

3. The amount in controversy in this matter exceeds the sum of $25,000, exclusive of interest, costs and attorneys fees, and is otherwise within the jurisdiction of this Court.

4. Venue and jurisdiction are proper in this Court.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

5. IPSC is a commercial and industrial contractor.

6. Rivian designs and builds electrical vehicles.

7. In January, 2017, Rivian purchased a de-commissioned 2.6 million-square-foot auto plant from Mitsubishi Motors located at 100 N. Mitsubishi Motorway, Normal, Illinois (the "Plant"). Rivian purchased the Plant in order to manufacture its new fleet of electric vehicles, and in particular, the electric van to be used by Amazon for the delivery of packages to its customers.

8. In order to facilitate the development and production of the vehicles, Rivian intended to completely demolish, strip-out and massively reconfigure the Plant, which when purchased, had been filled with paint booths, multiple assembly line conveyors and other equipment that was utilized by its former owner, Mitsubishi.

A. **RIVIAN'S FAILURE TO PAY FOR ENGINEERING SERVICES IT REQUESTED**

9. On March 12, 2018, IPSC submitted a proposal to Rivian in the amount of $1,350,000 to perform certain engineering services for the Paint Shop located inside the Plant. The term of the proposal was for one (1) year beginning on May 1, 2018 and ending April 30, 2019 (the "Term"). A copy of the March 12, 2018 proposal is in the possession of Rivian.

10. Rivian accepted the above-referenced proposal and on March 24, 2018, Rivian issued IPSC a purchase order in the amount of $1,350,000 for engineering support regarding the Paint Shop (the "Engineering Purchase Order"). A copy of the Engineering Purchase Order is in the possession of Rivian.

2

11. At the expiration of the Term, Rivian directed that IPSC and its subcontractor DJP Engineering Services, LLC ("DJP"), and in particular Mr. Doug Paler, to remain on-site continue to provide engineering services for the Paint Shop.

12. Rivian agreed to compensate IPSC for the additional work that was to be performed beyond the expiration of the Term.

13. Based on these representations, IPSC, DJP and Mr. Paler continued to perform engineering services for an additional sixteen (16) months through August 31, 2020 (the "Extended Term").

14. The total value of the engineering services performed during the Extended Term was $1,800,000 ($112,500 x 16 months). To date, Rivian has paid $180,000, leaving a balance due and owing IPSC in the amount of $1,620,000.

15. Despite repeated requests by IPSC, Rivian has refused to pay IPSC for the engineering services it directed to be performed during the Extended Term.

**B.  RIVIAN'S MISAPPROPRIATION OF IPSC'S SCRAP AND EQUIPMENT**

16. Simultaneous with the re-design of the Plant being undertaken by IPSC, Rivian solicited bids and proposals from contractors to perform certain construction and demolition work inside the Plant that was needed to be completed before the new assembly lines and equipment were installed for the electric vehicles being built by Rivian.

17. On or about January 16, 2019, IPSC submitted a proposal to demolish the Paint Shop at the Plant for a total of $6,596,920. At the time IPSC bid the work in question, it expressly included in its proposal that the offer was "based on IPSC receiving title to all scrap and equipment (i.e., robots, conveyors, panels, scrap metal, etc.).

3

18. Rivian accepted IPSC's proposal referenced above and issued a purchase order on January 31, 2019 in the amount of $6,596,920. A copy of this particular purchase order is in the possession of Rivian.

19. Over the course of the next several months, Rivian requested IPSC submit proposals to perform additional construction and demolition work at the Plant.

20. IPSC did in fact submit additional proposals, all of which contained the same language that the proposals were "based on IPSC receiving title to all scrap and equipment (i.e., robots, conveyors, panels, scrap metal, etc.).

21. Rivian accepted those proposals as well and throughout 2019 and into 2020, IPSC and Rivian entered into subsequent purchase orders for IPSC to perform additional construction and demolition work at the Plant. All of the purchase orders entered into between the parties concerning the construction and demolition are collectively referred to as the "Demolition Purchase Orders" and are in the possession of Rivian.

22. The inclusion of the transfer of title of the scrap and equipment (i.e., robots, conveyors, panels, scrap metal, etc.) to IPSC as part of its proposal is significant and was a material component of IPSC's bid estimate.

23. Specifically, the scrap and equipment inside the Plant has a substantial economic value. When it arrived at its estimate, IPSC intended and relied on the fact that its costs to perform the work in question would be offset by the subsequent sale of the scrap and equipment it would earn.

24. IPSC commenced work as required under the Demolition Purchase Orders.

25. Almost immediately, IPSC began to notice that volume of scrap and equipment it had intended to harvest from the Plant was substantially less than expected. For example, thousands of tons of copper wire were missing, robots that were intended to be removed by IPSC

4

were not present and air filtering equipment had vanished. This material and equipment had a significant economic value.

26. This situation of scrap and equipment being removed by entities and/or individuals other than IPS was continuous and systematic throughout the life of the project.

27. When IPSC notified Rivian personnel of the situation, Defendant's on-site representatives responded either with feigned concern, or alternatively, told IPSC that Plaintiff was not entitled to the scrap material and equipment that was at the Plant.

28. While IPSC was able to generate some revenue from the recovery of scrap and equipment, it was millions of dollars less than what was reasonably anticipated and customary in the industry.

29. It has since been discovered that several Rivian employees working at the Plant were actually stealing the scrap and equipment and/or alternatively, claiming it for themselves under the guise of needing it for the new design of the Plant.

30. IPSC has made multiple demands for reimbursement for the value of the scrap, material and equipment that it was denied as a result of Rivian's and its employees' theft and misappropriation, however Defendant has refused to pay for same.

## COUNT I
## BREACH OF CONTRACT – THE ENGINEERING PURCHASE ORDER

31. Plaintiff reiterates and incorporates all prior allegations as if fully set forth herein.

32. On or about March 24, 2018, the parties entered into the Engineering Purchase Order.

33. Among other things, the Engineering Purchase Order provided that Rivian would pay IPSC $1,350,000 for engineering support at the Paint Shop located in the Plant for the Term as defined above.

5

34. At the conclusion of the Term, Rivian directed IPSC and its subcontractor DJP and in particular Mr. Doug Paler, to remain on-site continue to provide engineering services for the Paint Shop.

35. IPSC and its subcontractor DJP did in fact remain at the Plant and provided engineering support for an additional sixteen (16) months, defined above as the "Extended Term".

36. The total value of the engineering services performed during the Extended Term was $1,800,000 ($112,500 x 16 months).

37. To date, Rivian has paid $180,000, leaving a balance due and owing IPSC in the amount of $1,620,000.

38. IPSC has invoiced Rivian for the engineering services it has provided Rivian during the Extended Term.

39. Rivian has failed and/or refused to pay the entire amount owing to IPSC for the engineering services rendered.

40. Presently, IPSC is owed $1,620,000 for the engineering services at issue.

41. Rivian's failure to pay IPSC is a material breach of the Engineering Purchase Order.

WHEREFORE, IPS Contracting, Inc. requests this Court enter a judgment in its favor and against Defendant Rivian Automotive, LLC, in the amount of $1,620,000, plus interest, costs, and attorneys' fees, as well as all other relief this Court deems equitable and just, arising out of Rivian's breach of the Engineering Purchase Order.

## COUNT II
## BREACH OF CONTRACT – THE DEMOLITION PURCHASE ORDERS

42. Plaintiff reiterates and incorporates all prior allegations as if fully set forth herein.

43. Throughout 2019 and into 2020, IPSC and Rivian entered into a series of Demolition Purchase Orders regarding certain construction and demolition work that was to be performed inside the Plant.

6

44. At the time IPSC bid the work in question, and throughout 2019 and 2020, it expressly included in its proposals that the offer was "based on IPSC receiving title to all scrap and equipment (i.e., robots, conveyors, panels, scrap metal, etc.).

45. These proposals were accepted by Rivian.

46. Rivian accepted those proposals as well and IPSC and Rivian entered into subsequent purchase orders for IPSC to perform additional construction and demolition work at the Plant, defined above as the "Demolition Purchase Orders".

47. The inclusion of the transfer of title of the scrap and equipment (i.e., robots, conveyors, panels, scrap metal, etc.) to IPSC as part of its proposal is significant and was a material component of IPSC's bid estimate.

48. The scrap and equipment inside the Plant had a substantial economic value that IPSC intended and expected to receive as part of its work under the Demolition Purchase Orders.

49. IPSC received considerably lower quantities of scrap and equipment it had intended to harvest from the Plant. For example, thousands of tons of copper wire were missing, robots that were intended to be removed by IPSC were not present and air filtering equipment had vanished.

50. IPSC notified Rivian personnel of the situation who failed to remedy the situation.

51. IPSC has made multiple demands for reimbursement for the value of the scrap, material and equipment that it was denied as a result of Rivian's and its employees' theft and misappropriation, however Defendant has refused to pay for same.

52. The scrap, material and equipment misappropriated by Rivian has a commercial value in excess of $10,000,000.

53. The failure of Rivian to fully compensate IPSC for the commercial value of the scrap, equipment and material that it was entitled to is a material breach of the Demolition Purchase Agreements.

7

WHEREFORE, IPS Contracting, Inc. requests this Court enter a judgment in its favor and against Defendant Rivian Automotive, LLC, in an amount in excess of $10,000,000, plus interest, costs, and attorneys' fees, as well as all other relief this Court deems equitable and just, arising out of Rivian's breach of the Demolition Purchase Orders.

## COUNT III
## QUANTUM MERUIT/UNJUST ENRICHMENT

54. Plaintiff reiterates and incorporates all prior allegations as if fully set forth herein.

55. This claim is being plead in the alternative as provided for under the Michigan Court Rules.

56. IPSC provided Rivian and with engineering services, labor and materials.

57. Rivian has obtained substantial benefits from the use of the engineering services, labor and materials provided to it by IPSC.

58. Rivian has not compensated IPSC for the full value of the engineering services, labor and materials received from IPSC.

59. Allowing Rivian to retain the benefits of the engineering services, labor and materials provided by IPSC without compensating Plaintiff would be inequitable.

60. Allowing Rivian to retain the benefits of the engineering services, labor and materials provided to it by IPSC without full compensation to IPSC would result in Rivian's unjust enrichment at Plaintiff's expense.

61. IPSC is entitled to an amount no less than $11,630,000 from Rivian for the engineering services, labor and materials it has provided to Defendant.

WHEREFORE, IPS Contracting, Inc., requests this Court enter a judgment in its favor and against Defendant Rivian Automotive, LLC, in an amount in excess of $11,630,000, plus interest, costs, and attorneys' fees, as well as all other relief this Court deems equitable and just.

8

## COUNT IV
## PROMISSORY ESTOPPEL

62. Plaintiff reiterates and incorporates all prior allegations as if fully set forth herein.

63. Rivian represented and promised that it would pay IPSC for the engineering services, labor and materials provided to it by IPSC. Rivian further represented and agreed that IPSC would be entitled to all scrap and equipment (i.e., robots, conveyors, panels, scrap metal, etc.) in the Plant.

64. IPSC reasonably relied on these representations and promises made by Rivian and, in consequence, provided and continued to provide Rivian with engineering services, labor and materials.

65. IPSC has suffered substantial injustice and prejudice due to Rivian's failure to comply with its representations and promises that it would pay for the engineering services, labor and materials, as well as that IPSC would receive title to all scrap and equipment (i.e., robots, conveyors, panels, scrap metal, etc.) in the Plant.

66. IPSC has been damaged in the amount in excess of $11,630,000 by Rivian's failure to remit payment for the engineering services, labor and materials provided by Plaintiff, as well as the value associated with all scrap and equipment (i.e., robots, conveyors, panels, scrap metal, etc.) in the Plant.

WHEREFORE, IPS Contracting, Inc., requests this Court enter a judgment in its favor and against Defendant Rivian Automotive, LLC, in an amount in excess of $11,630,000, plus interest, costs, and attorneys' fees, as well as all other relief this Court deems equitable and just.

## COUNT V
## INNOCENT MISREPRESENTATION

67. Plaintiff reiterates and incorporates all prior allegations as if fully set forth herein.

9

68. In order to induce IPSC to enter into the Engineering Purchase Order and the Demolition Purchase Orders, and to otherwise provide the engineering services, labor and materials necessary to perform the work at the Plant, Rivian represented to IPSC that it would be paid in full.

69. The representations were material in the context of the transaction.

70. The representations were made with the intent that IPSC rely thereon to its detriment and provided the engineering services, labor and materials to perform and complete the work at the Plant.

71. Although innocently made, the representations were false when made. In the alternative, the representations were made in reckless disregard of their truth or lack thereof.

72. IPSC in fact relied on the representations to its detriment and entered into the Engineering Purchase Order and the Demolition Purchase Orders with Rivian.

73. Rivian thereafter failed and refused to make payment for the engineering services, labor and materials IPSC furnished pursuant to requests and direction of Rivian.

74. The foregoing constitutes innocent misrepresentation as that term is defined by applicable Michigan law.

75. Occasioned on the innocent misrepresentation of Rivian as set forth in the foregoing particulars, IPSC has suffered damages.

WHEREFORE, IPS Contracting, Inc., requests this Court enter a judgment in its favor and against Defendant Rivian Automotive, LLC, in an amount in excess of $11,630,000, plus interest, costs, and attorneys' fees, as well as all other relief this Court deems equitable and just.

## COUNT VI
## CONVERSION

76. Plaintiff reiterates and incorporates all prior allegations as if fully set forth herein.

10

77. Rivian has unlawfully retained and exercised wrongful dominion and control over Plaintiff's property, specifically, title to all scrap and equipment (i.e., robots, conveyors, panels, scrap metal, etc.) located in the Plant that was to collected, harvested and sold by IPSC under the terms of the proposals accepted by Defendant.

78. IPSC has repeatedly demanded payment for the commercial value of the scrap misappropriated by Rivian and its employees, however Defendant has refused to comply with those repeated requests.

79. Rivian has attempted to conceal the conversion and intentionally misrepresented facts to conceal the conversion in an effort to avoid paying IPSC.

80. The acts described above constitute an unlawful conversion of IPSC's property.

WHEREFORE, IPS Contracting, Inc., requests this Court enter a judgment in its favor and against Defendant Rivian Automotive, LLC, in an amount in excess of $10,000,000, plus interest, costs, and attorneys' fees, as well as all other relief this Court deems equitable and just.

## COUNT VII
## STATUTORY CONVERSION

81. Plaintiff reiterates and incorporates all prior allegations as if fully set forth herein.

82. Rivian has unlawfully retained and exercised wrongful dominion and control over Plaintiff's property, specifically, title to all scrap and equipment (i.e., robots, conveyors, panels, scrap metal, etc.) located in the Plant that was to collected, harvested and sold by IPSC under the terms of the proposals accepted by Defendant.

83. IPSC has repeatedly demanded payment for the commercial value of the scrap misappropriated by Rivian and its employees, however Defendant has refused to comply with those repeated requests.

84. Rivian has attempted to conceal the conversion and intentionally misrepresented facts to conceal the conversion in an effort to avoid paying IPSC.

85. The acts described above constitute an unlawful conversion of IPSC's property.

86. Pursuant to MCL 600.2919a, Rivian is liable to IPSC for treble damages, costs, and attorneys' fees.

WHEREFORE, IPS Contracting, Inc., requests this Court enter a judgment in its favor and against Defendant Rivian Automotive, LLC, in an amount in excess of $30,000,000, plus interest, costs, and attorneys' fees, as well as all other relief this Court deems equitable and just.

FRASCO CAPONIGRO WINEMAN
SCHEIBLE HAUSER & LUTTMANN, PLLC

*/s/ J. Christian Hauser*
J. Christian Hauser (P57990)
Attorneys for Plaintiff
1301 W. Long Lake Road, Suite 250
Troy, MI  48098
(248) 334-6767

Dated: March 29, 2021